[No. 22871. Department One. April 2, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER DELANEY, *Appellant*.[1]

*Harry Rosenhaupt* and *Lucius G. Nash*, for appellant.

*Chas. W. Greenough*, for respondent.

PARKER, J.—The defendant, Delaney, was, by information filed in the superior court for Spokane county,

[1]Reported in 297 Pac. 208.

charged, in Count I thereof, with the felony of second degree burglary committed in that county on April 16, 1930, and charged, in Count II thereof, with the gross misdemeanor of petit larceny committed in that county on the same day. He pleaded not guilty to both counts. The case proceeded to trial in the superior court, sitting with a jury, resulting in separate verdicts finding Delaney guilty on both counts. His motion for new trial being by the court denied, separate final judgments were rendered against him sentencing him to the penitentiary on Count I, and sentencing him to the county jail on Count II, from which judgments Delaney has appealed to this court.

The only contention here made in behalf of Delaney is that the trial court erred to his prejudice in permitting the prosecuting attorney to examine witnesses for the prosecution, and have them testify, in contradiction of testimony of William Bird, a witness for the state, as to which testimony the prosecuting attorney claimed surprise; the theory of the contention being that Bird had not in his testimony made any affirmative statements unfavorable to the prosecution or favorable to the defense, he having testified only that he did not remember facts as the prosecuting attorney sought to have him testify in answer to leading questions.

The theory of the prosecution, and manifestly the theory of the jury in finding Delaney guilty, was that the alleged burglary and larceny were committed at the same time, in the nighttime, very early in the morning, by breaking and entering a room of one Talbot, and by stealing therefrom $17.80. The evidence against Delaney was wholly circumstantial. When he was arrested later that same morning, there was found on his person $14.40. The prosecuting attorney sought to prove, as one of the circumstances pointing to the

guilt of Delaney, that late in the evening of the same night he had asked Bird to loan him a dollar. This fact was of substantial importance as an attending circumstance pointing to the guilt of Delaney, if proved by competent evidence.

William Bird was put upon the stand as a witness for the state when the following occurred:

"MR. SMITH [Counsel for the State]: Q. Do you know the defendant, Walter Delaney? A. Yes, sir. Q. Did you see him on the day and evening before his arrest? A. I saw him the night before; he got arrested in the morning. Q. Where? A. I saw him in my place and at the coffee house. Q. What was he talking about? A. Several different things we talked about. Q. Did he make any request for a loan from you? A. Oh, no, not that night. He borrowed money from me quite often. Q. He was broke quite a lot of the time? A. No, I don't think so. Q. Did he always pay you back? A. He did. Q. Mr. Bird, on this particular night is it a fact that he asked you to loan him a dollar? A. Well, I don't remember that night, absolutely, I don't. Q. Do you know Officers William J. Hudson and William Pratt? A. Yes, sir. Q. Do you remember talking to them after Delaney's arrest? A. I remember talking to you, but I don't remember telling you anything about him asking for some money, I don't remember that. Q. Will you say that you did not tell those officers that? A. Well, I don't remember that, absolutely, I don't. MR. NASH [Counsel for Delaney]: I object; they are trying to impeach their own witness. MR. SMITH: I expected certain testimony from this witness and it appears now he doesn't remember and I expected him to testify positively to a fact. THE COURT: There is no question here yet I can rule on. MR. NASH: I object to the attempt of the prosecutor to impeach his own witness. MR. SMITH: Will you state positively, Mr. Bird, that you did not tell Officers Hudson and Pratt that the night before Delaney's arrest he had been broke the night before and he asked you to loan him a dollar? A. I absolutely don't remember saying that. MR. NASH: I object.

THE COURT: Did you expect him to give this testimony? MR. SMITH: Yes, sir. THE COURT: Objection overruled. Defendant excepted.''

Immediately thereafter, William J. Hudson was put upon the stand as a witness for the state, when the following occurred:

''MR. SMITH: Q. Did you have anything to do with the investigation of this Delaney case? A. I did. Q. He was arrested on the morning of the 16th? A. Yes, sir. Q. I will ask you specifically if you had a talk with William Bird? A. Yes, I did. Q. Was that with reference to Delaney? A. Yes. Q. Will you state what that was? A. Mr. Bird said Delaney asked him that night about 11 or 11:30 for a dollar. He wanted to borrow a dollar. MR. NASH: I object because the only purpose of this is to produce this witness to show that Delaney borrowed a dollar from Bird. This is the only purpose of it and it is impeaching their own witness. THE COURT: Objection overruled. Defendant excepted.''

Immediately thereafter, Ira A. Martin was put upon the stand as a witness for the state, when the following occurred:

''MR. SMITH: Q. You are a police officer? A. Yes, sir. Q. Did you talk to Delaney that night, or did you call him in your office? A. Yes, I talked to him and another party in my office that night. Q. Who was the other party? A. William Bird. Q. Was Delaney in your office while he [Bird] was talking? A. No, I don't believe he was. Q. Then in your conversation with William Bird I will ask you to state only this: Did he tell you that Delaney had borrowed a dollar from him the night before his arrest? MR. NASH: If Delaney was not present, I object to it. THE COURT: Objection overruled. Defendant excepts. A. Yes, he did.''

It may be conceded, for purposes of our present inquiry, that the prosecuting attorney in good faith put Bird on the stand as a witness for the state, ex-

pecting to prove by him that Delaney had, during the evening prior to the alleged burglary and larceny, asked him (Bird) for the loan of a dollar, and that the prosecuting attorney was surprised at the testimony of Bird to the effect that he did not remember of Delaney's then asking for such a loan; and this, it may be conceded, entitled the prosecuting attorney to cross-examine Bird by leading questions as an adverse witness, as was done. This, however, is only preliminary to our real inquiry.

The question for decision here is: Was the prosecution entitled to have go to the jury, the testimony of Hudson and Martin that Bird had told them that Delaney had, during the evening prior to the alleged burglary and larceny, asked him, Bird, for the loan of a dollar? To permit Hudson and Martin to testify that Bird had told them that Delaney had asked him, Bird, for such a loan, was plainly to permit Hudson and Martin to give hearsay testimony as attempted proof of Delaney's requesting such a loan from Bird. Plainly, this was not permissible under the guise of impeaching Bird. He had not made an affirmative statement of any admissible evidentiary fact favorable to the defense, or unfavorable to the prosecution, which called for contradiction by impeachment or otherwise.

In *Ferris v. Todd,* 124 Wash. 643, 215 Pac. 54, this question was very similarly presented and decided adverse to the contention here made by counsel for the state. We there quoted with approval the applicable law as well stated in the text of 40 Cyc. 2696, as follows:

" 'The mere fact that a witness has failed to testify as expected does not warrant impeaching him by proof of prior statements in conformity to what he was expected to testify; but proof of prior contradictory statements of a party's own witness is admissible only

where the witness has given affirmative testimony hostile or prejudicial to the party by whom he was called; and in such case the proof must be confined to contradictions of the testimony of the witness which is injurious to the party seeking to impeach him.' "

The following of our decisions hold to this view of the law: *State v. Simmons,* 52 Wash. 132, 100 Pac. 269; *State v. Catsampas,* 62 Wash. 70, 112 Pac. 1116; *State v. Bossio,* 136 Wash. 232, 239 Pac. 553. It is true, as here pointed out by counsel for the state, that in the decision in the *Bossio* case it was noticed that the prosecuting attorney disclaimed surprise at the testimony of his witness, and that seems one of the points stressed in that decision. However, a critical reading of it as a whole, we think, will disclose that the court would have reached the same conclusion irrespective of surprise on the part of the prosecuting attorney. We see nothing in that decision out of harmony with the law as announced in our other above cited cases. See, also, 28 R. C. L. 646, and citations.

Our decisions in *Burger v. Taxicab Motor Co.,* 66 Wash. 676, 120 Pac. 519, and *Blystone v. Walla Walla Valley R. Co.,* 97 Wash. 46, 165 Pac. 1049, to which our attention is called by counsel for the state, are, we think, plainly not out of harmony with our decisions as above noticed. In those cases, the court was dealing with prior statements made by the adverse witness, of an affirmative character unfavorable to the party calling him and favorable to the opposing party. The same may be said with reference to *State v. Kellogg,* 91 Wash. 665, 158 Pac. 344. Besides, in that case the question was more one of cross-examination of the adverse witness than the matter of his subsequent impeachment.

A somewhat more difficult question is presented by the contention here made in behalf of the prosecu-

tion that counsel for Delaney did not timely sufficiently save, upon the trial, his right to have reviewed, upon this appeal, his claim of error above noticed; invoking the general rule that error cannot be successfully assigned upon answers to questions before objection thereto, when no motion is thereafter made to strike the answers and have the jury instructed to disregard them, as announced in *State v. Claughton,* 153 Wash. 473, 279 Pac. 734.

The objections made by counsel for Delaney near and at the close of the above quoted testimony of Bird, seem to us to have plainly informed the court that Bird's testimony was objected to as laying a foundation for his impeachment by showing previous contradictory statements made by him. Those objections, we may concede, were not sustainable as calling for the exclusion of Bird's testimony given in response to his cross-examination by the prosecuting attorney as an adverse witness; but those objections did inform the court that counsel for Delaney did object to Bird's testimony being regarded as entitling the prosecuting attorney to thereafter prove that Bird had previously made the statements which were sought to be proved by such cross-examination. This, we think, lends aid to the interpretation of the later objections made by counsel for Delaney.

The objection of counsel for Delaney at the close of the above-quoted testimony of Hudson, it is true, was made after the answer of Hudson was given, and was not followed by any motion or request to strike his answer. This objection, we may here assume, was not sufficient in itself to save Delaney's right to have that error reviewed on this appeal. But it is of moment here in connection with the later objection made by counsel for Delaney, especially as the court overruled the objection, plainly evidencing its opinion that the

answer was admissible, and its view that a formal motion to strike the answer would be denied.

The objection of counsel for Delaney to the question asked by the prosecuting attorney of Martin: ''Did he [Bird] tell you that Delaney had borrowed a dollar from him the night before the arrest,'' was timely made immediately upon asking the question and before it was answered by Martin. This objection was by the court overruled and Martin permitted to answer: ''Yes, he did.'' This, of course, did not call for any motion to strike the answer in order to save the error to Delaney for review upon this appeal. It is true that the objection was not as full and specific in terms as it might have been, but, in view of what had transpired in connection with the prior objections of counsel for Delaney and the rulings of the court thereon, it seems plain to us that the court was fully advised that the ground of the objection was, that the answer would necessarily be hearsay and not in contradiction of any affirmative statement theretofore made by Bird favorable to the defense or unfavorable to the prosecution. In view of all of the objections of counsel for Delaney and the rulings of the court thereon above noticed, we are of the opinion that the error complained of in behalf of Delaney was timely and sufficiently preserved for review upon appeal.

We conclude that the judgments must be reversed and the cause remanded to the superior court for a new trial, or such other proceedings as shall not be inconsistent with the views herein expressed. It is so ordered.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MAIN, JJ., concur.