[No. 13363.   Department Two.   August 29, 1916.]

THE STATE OF WASHINGTON, *Respondent*, v. J. H. SPANGLER,
*Appellant*.[1]

HOMICIDE — EVIDENCE — PRIOR QUARRELS — ADMISSIBILITY.  In a
prosecution for marital homicide, evidence of a quarrel between hus-
band and wife, ten days before the homicide, is admissible.

CRIMINAL LAW—SANITY—EVIDENCE—EXPERT OPINION—CONSENT TO
EXAMINATION.  The opinion of a specialist as to the sanity of the ac-
cused, based upon an examination made at the jail without the
knowledge or consent of his attorneys, is not subject to the objection
that the prisoner was compelled to give evidence against himself,
the rule as to evidence obtained by duress or threats having no ap-
plication.

SAME—APPEAL—PRESERVATION OF GROUNDS—SPECIFIC OBJECTIONS
TO EVIDENCE.  An objection that the opinion of a specialist as to the
sanity of the accused was based upon an examination that was com-
pulsory and surreptitious and that it was not relevant is not suffi-
cient to raise the point that the opinion was inadmissible because
based in part upon his understanding of the testimony of other wit-
nesses at the trial.

SAME—SANITY—EVIDENCE — OPINION OF EXPERT — ADMISSIBILITY.
The opinion of a specialist as to the sanity of the accused is not in-
admissible because it was based in part upon the facts as they ap-
peared at the trial from the testimony of other witnesses, where
there was no substantial conflict in such testimony.

SAME — SANITY — EVIDENCE — REBUTTAL — CONDUCT OF ACCUSED—
ADMISSIBILITY.  Upon a prosecution for homicide, in which the ac-
cused put his sanity in issue and gave evidence in defense as to his
habits of intoxication and that just previous to the homicide he had
not acted naturally, the state in rebuttal may show that when in-
toxicated he had a quarrelsome disposition and on one occasion had
agitated a fight; since the state is not limited to a denial of the
particular conduct in offering evidence of other acts or conduct tend-
ing to show that he was sane when committing the act.

Appeal from a judgment of the superior court for Lewis
county, Rice, J., entered September 28, 1915, upon a trial
and conviction of murder in the first degree.   Affirmed.

[1]Reported in 159 Pac. 810.

*Forney & Ponder,* for appellant.

*C. D. Cunningham, C. A. Studebaker, H. E. Donohoe,* and *W. O. Grimm,* for respondent.

MAIN, J.—The defendant killed his wife at Vader, Washington, on August 13, 1915. Thereafter an information was filed against him by which he was charged with the crime of murder in the first degree. To the information, a plea of not guilty was entered, and a special plea of mental irresponsibility at the time the offense was committed, but that such mental irresponsibility had disappeared at the time of entering the plea. Upon the issues thus framed, the trial resulted in a verdict of guilty of murder in the first degree. A motion for a new trial being made and overruled, judgment was entered upon the verdict. The defendant was sentenced to life imprisonment. From this judgment and sentence, the appeal is prosecuted.

The appellant and the deceased were married about seven years prior to the homicide. Some time after the marriage, trouble between them arose, largely, if not entirely, due to the appellant's habits as to intoxication. For some time prior to August 13, they had been conducting a small confectionery business at the town of Vader. Some days before the date mentioned, the deceased had instituted an action for divorce against the appellant. From about the time when the action was instituted until the time of the killing, the wife had been conducting the confectionery business alone, though the appellant was about the store from time to time. The deceased had a son by a former marriage, who was a lad of ten or twelve years of age.

On the evening of August 13, the appellant came to the store and requested of the deceased that her son be permitted to accompany him to Kelso, where he was to repair an automobile. This request was refused. He then left the store, but shortly afterwards returned. Upon his return, two ladies, in addition to the deceased, were in the store.

The appellant requested the deceased to step to a room in the back part of the building as he desired to talk to her. This request was refused. He then requested that she step out upon the sidewalk in front of the building, and this was likewise refused. The two ladies mentioned were sitting at an ice cream table. After the second request was made and refused, the deceased turned around preparatory to sitting down at the table at which the other two ladies were seated. While thus standing with her back toward the appellant, he drew a revolver from his pocket, placed the muzzle near the back of the deceased's head, and fired. The shot caused instant death. There is evidence that, during this day, the appellant had been in the city of Centralia, and had been drinking to some extent.

Upon the trial, evidence was offered by the state touching a quarrel which occurred between the husband and wife about ten days prior to the shooting. It is claimed this was error. The rule is well settled that, in cases of marital homicide, the state has the right to prove ill-treatment or quarrels with his wife, on the trial of the husband for her murder. 1 Wharton, Criminal Evidence, § 43; *Sayres v. Commonwealth*, 88 Pa. St. 291; *Hall v. State*, 31 Tex. Cr. 565, 21 S. W. 368; *McCann v. People*, 3 Parker Cr. Rep. (N. Y.) 272; *Parsons v. People*, 218 Ill. 386, 75 N. E. 993.

In the case last cited, upon this question it was said:

"It is contended by the plaintiff in error that the court erred in admitting evidence as to quarrels and disagreements between plaintiff in error and his wife. But we are of the opinion there was no error in permitting such testimony to be introduced. It has been held that, where a husband or wife is charged with the murder of the other, it is competent to prove their mutual conduct towards, and treatment of each other, as manifested by acts and words."

Objection is made to the testimony of Dr. D. A. Nickelson, a specialist in nervous and mental diseases, who was permitted upon the trial to give his opinion as to the appellant's sanity

at the time the offense was committed, based upon an examination made of the appellant, and also upon the facts as they appeared upon the trial from the testimony of other witnesses. This witness examined the appellant while he was in jail awaiting trial, with the knowledge of the sheriff and at the request of the prosecuting attorney, but without the knowledge or consent of the appellant's attorneys. The evidence does not show the nature or extent of the examination. Neither does it show that the defendant was unwilling that the examination take place. No evidence was offered of any act done by the appellant or statement made by him. In brief, the evidence only showed that the examination was made, and that, based upon such examination, and upon the facts as they appeared from the testimony of other witnesses, he was of the opinion that the appellant was sane at the time of the homicide. This evidence was properly admissible unless the fact that the witness' opinion, as shown by the question, was based not alone upon the examination, but also upon the testimony of other witnesses, renders it incompetent. 8 R. C. L. p. 194, § 190.

In *People v. Kemmler*, 119 N. Y. 580, 24 N. E. 9, it was said:

"It is argued that the court erred in permitting the physicians, called as witnesses for the people, to testify as to the mental condition of the prisoner. The argument is that either the relation of patient and physician existed, or else the prisoner was compelled to furnish evidence against himself. These physicians were sent to the jail by the district attorney to make an examination of the prisoner's mental and physical condition. On the stand they were not inquired of as to the conversations had with him, or as to the transactions in the jail. Their testimony was simply their opinion of his mental condition, as they saw him in his cell and in the court room, but they gave no evidence of his statements, or of his physical condition. Such evidence is quite unobjectionable."

In such a case, the rule relative to evidence which is obtained by duress or by putting in fear has no application.

As stated, the question propounded to the witness called for his opinion as to the sanity of the accused, based not alone upon his examination, but upon the facts as they appeared upon the trial from the testimony of other witnesses.

It is claimed that it was error to permit the witness to give his opinion based upon his understanding of the testimony of other witnesses as he had listened to it during the trial. To this objection there are two answers: One is that the question was not objected to upon the ground now urged against it. The other, that the testimony was competent under the facts in this case. The objection to the question was upon the ground that the examination was compulsory, was without the knowledge of the appellant's attorneys, was done surreptitiously and against the wishes of the defendant, and on the further ground that it was not relevant. By the objection, the trial court's attention was not called to the fact that the evidence was claimed to be inadmissible because the question called for an answer based upon the testimony of other witnesses as well as upon the examination. The objection to the evidence upon the ground here urged not having been presented to the trial court cannot be made available upon appeal. *Pittman v. State*, 51 Fla. 94, 41 South. 385, 8 L. R. A. (N. S.) 509; *State v. Brady*, 100 Iowa 191, 69 N. W. 290, 62 Am. St. 560, 36 L. R. A. 693; *People v. Burman*, 154 Mich. 150, 117 N. W. 589; *State v. Martin*, 47 Ore. 282, 83 Pac. 849; 2 R. C. L. p. 90, § 67.

In the authority last cited, the rule is stated thus:

"The purpose of requiring an objection to rulings of the trial court is to call to the attention of the court the specific error complained of, and not only must the grounds of the objection be stated with sufficient certainty, but the appellate court will only consider such grounds of objection as are specified."

But assuming that the objection was sufficient to save the question, the evidence was properly admissible for the reason that there was no substantial conflict in the testimony of the

witnesses upon which the opinion of the witness as to the sanity of the accused was partially based. The rule is that such a question is proper where based upon the testimony of a single or a few witnesses in whose testimony there is no substantial conflict, so that it is not probable that the expert witness and the jury understood the testimony differently. 1 Thompson, Trials (2d ed.), § 595; *Cornell v. State*, 104 Wis. 527, 80 N. W. 745,

In the case last cited, speaking upon a similar question, it was said:

"That such question is proper where based upon the testimony of a single or a few witnesses, whose testimony is not conflicting, so that there is no likelihood that the expert witness and the jury can understand it differently."

Objection is made also to the ruling of the court in admitting evidence in rebuttal that the accused, when drunk, had a quarrelsome disposition, and on one occasion agitated a fight. In defense, evidence had been offered as to the habits of intoxication of the accused, and also that, on August 13, previous to the homicide, he seemed nervous and worried and did not act naturally. As a defense, the appellant put his sanity at the time the offense was committed in issue. In support of this he offered evidence of his previous conduct. Where such a defense is interposed, and evidence of the previous conduct of the accused is offered by him as sustaining his claim of insanity, the state, in rebuttal, is not limited to an explanation or denial of the particular conduct of the accused or declarations put in evidence by the defendant, but may offer evidence of other acts or conduct of the accused as tending to show that he was sane at the time the act was committed. *United States v. Holmes*, 1 Cliff. (U. S.) 98; *Upstone v. People*, 109 Ill. 169.

In the case last cited it was said:

"Evidence of previous intoxication on the part of the defendant was properly enough admitted, as bearing upon the

question of intoxication at the time of the homicide, and of the conduct of defendant when in that state."

The rule that the state cannot offer testimony impeaching the defendant's character until his character has first been placed in issue by himself has no application here. The question in issue was the state of his mind at the time the offense was committed; and the testimony offered bore upon that question, and was competent.

The judgment will be affirmed.

MORRIS, C. J., HOLCOMB, PARKER, and BAUSMAN, JJ., concur.