[No. 33027. Department Two. April 28, 1955.]

J. EVAN BLACKBURN *et al., Respondents,* v. C. L. GROCE *et al., Defendants,* JOHN B. FOWLER *et al., Appellants.*[1]

[1]Reported in 283 P. (2d) 115.

*Rode, Cook, Watkins & Orth* and *William R. Thomas,* for appellants.

*Hullin & Ehrlichman,* for respondents.

HILL, J.—This case concerns the effect of comments by a trial judge, apart from which we have much the same issues and questions presented as in any other intersection collision between a favored driver traveling on an arterial and a disfavored driver entering the arterial, except that the disfavored driver, thanks tò the doctrine of last clear chance, is here the prevailing party. The favored driver and her husband appeal from a judgment entered on a verdict favorable to the plaintiff, the disfavored driver. We shall refer to J. Evan Blackburn, the disfavored driver, as though he were the only respondent, and Anita L. Fowler, the favored driver, as though she were the only appellant.

█ Contrary to appellant's contention, this case represents a proper situation for the application of the doctrine of last clear chance. The jury was entitled to find that the disfavored driver in this case drove his Chevrolet onto an east-west arterial highway from the north, intending to make a left turn and proceed east on the arterial. When he saw a Cadillac driven by appellant approaching from the east, he concluded (probably erroneously) that it was safer to back up and try to get off the highway than to continue across the westbound traffic lane in front of the oncoming car. When hit by the Cadillac, all but the front eighteen inches, or a little less, of the Chevrolet was off the blacktopped portion of the highway. Conceding contributory negligence on the part of the respondent, it is agreed that there was no other car in sight in either direction, and the appellant had not only eight or more feet on her own westbound traffic lane, but all ten feet of the eastbound traffic lane in which to avoid his car. (The blacktopped portion of the arterial highway was approximately

twenty feet in width with a center line dividing the east and westbound lanes.) ·

The question of whether the appellant could and should have avoided hitting respondent's car was submitted to the jury on a last clear chance instruction, as was the question of whether she was in an emergent situation in consequence of his negligence. (Her testimony on this issue was that the respondent driver had backed his car entirely off the highway, and then suddenly came forward onto the highway again, thus creating an emergency. This the jury apparently did not believe.)

If the jury believed the respondent, it was justified in finding that the favored driver herself created any emergency which confronted her, and that she had ample opportunity and the last clear chance to avoid the collision.

The judgment for the respondent based on the verdict of the jury must be affirmed in the absence of some prejudicial error in the instructions, rulings on evidence, or the trial judge's comment on the evidence.

Appellant urges that respondent could not recover because of his contributory negligence as a matter of law. We agree with the appellant that, under the respondent's own testimony, he was negligent in permitting his car to project into the appellant driver's lane of traffic, whatever the distance may have been, because to that extent he failed to yield the right of way as required by RCW 46.60.170 [cf. Rem. Rev. Stat., Vol. 7A, § 6360-90]. See *Geitzenauer v. Johnson* (1931), 161 Wash. 444, 297 Pac. 174, another case in which one of the cars involved extended eighteen inches beyond its proper position. We would agree that there was contributory negligence as a matter of law on the part of respondent if it was conceded that the Cadillac was entirely on the blacktop at the moment of impact, for then such negligence would have been clearly a proximate cause of the collision, as in the *Geitzenauer* case, *supra*; but he indicated by his placing of the cars on a map that the right front of the Cadillac was off the blacktopped portion of the highway at the moment of impact, so that the Chevrolet

would have been hit even though it had been entirely off the blacktop, in which event the fact that it projected a few inches over the blacktop would not have been a proximate cause of the collision as a matter of law.

The question of whether respondent's admitted negligence was a proximate cause of the collision and hence constituted contributory negligence was for the jury, and that is exactly what was submitted to it by instruction No. 6, which charged that any violation of RCW 46.60.170, including failure to yield the right of way, would constitute negligence, and that if the jury found that such violation proximately caused the injuries or damages sustained by the respondent, his conduct constituted contributory negligence.

However, if the contributory negligence of Blackburn be conceded, his right of recovery was not barred, as he relied on the doctrine of last clear chance. What we have heretofore said indicates our belief that an instruction on that doctrine was entirely proper, and that appellant's contention to the contrary is without merit. We agree, however, with the appellant that the second phase of the last clear chance doctrine, which deals with the situation where the defendant driver does not see, but should have seen, the peril of the plaintiff, was neither accurately stated nor applicable. Passing the question of the sufficiency of the exceptions taken to that instruction, the appellant could not be prejudiced thereby, inasmuch as she testified that she saw the respondent when his car was three feet or more onto the blacktop and that she had him in view at all times thereafter, during which time he backed entirely off the blacktop and then came suddenly forward directly in front of her in such a manner as made it impossible to avoid him. Since she saw him at all times, it was immaterial whether his negligence continued or terminated prior to the collision.

The giving of instruction No. 8 is also assigned as error, but we shall not discuss its substance, inasmuch as the exceptions taken did not call the trial court's attention to the error now claimed, and the error, if there be any,

was not sufficiently patent to warrant a departure from our oft-reiterated rule that the exception must call the trial court's attention to the claimed error in the instruction. *Lasser v. Grunbaum Bros. Furniture Co.* (1955), *ante* p. 408, 281 P. (2d) 832.

Nor do we find error in the admission, over objection, of a signed account by the respondent's witness, Harold G. Hesson, giving his account of the collision.

Appellant's counsel, on cross-examination, had asked Hesson concerning something contained in a signed statement taken from him shortly after the collision. Hesson admitted that the matter inquired about which was inconsistent with his testimony was in the statement he had signed. The appellant could not then have offered the statement in evidence under the rule which she now invokes, because, as we have frequently held, in accordance with the generally recognized rules of evidence, if a witness admits he made the contradictory statement, the impeachment is complete and no further evidence thereof is necessary or admissible. *Quayle v. Knox* (1933), 175 Wash. 182, 27 P. (2d) 115; *Ewer v. Johnson* (1954), 44 Wn. (2d) 746, 270 P. (2d) 813.

However, on redirect examination, the entire statement was offered by the respondent to show that the signed statement by the witness was in substantial agreement with his testimony. It was offered for the purpose of rehabilitating the witness, and the trial judge did not abuse his discretion in admitting it for that purpose.

It is urged that there was a comment on the evidence during the cross-examination of the respondent. The situation was the very familiar one where the cross-examiner, having elicited a statement from the plaintiff at variance with an allegation in the complaint, is confronting him with his signature on the verification of the complaint, and getting his admission that he read it and swore to it, before confronting him with the claimed contradiction. It is doubtless good theater, but unless the discrepancy between the testimony and the allegation is material, it may seem a needless waste of time to the trial judge, who, through the eyes of ex-

perience, has correctly appraised its value. In this case, the respondent had testified that his car projected onto the blacktopped portion of the highway eighteen inches or less at the time of the collision. In his complaint, he had said two or three feet. The difference of some six to eighteen inches may well have seemed of little consequence to the trial judge.

Two of the court's statements are complained of as constituting comment, and they must be examined in context. The respondent had admitted that he read the complaint and that he signed the verification. (These preliminaries had taken about a page and a half of the record.) Then the following occurred:

"Q. I will ask you if, at that time—that is, on June 19, 1953, you swore to the following: 'That the plaintiff succeeded in backing his vehicle to a position so that only the front two or three feet of his vehicle extended onto Highway 14. . .' Do you remember making that statement? MR. HULLIN: Read the rest of the sentence. MR. ORTH: That isn't important, Counsel. I am examining. THE COURT: *We are spending so much time on minor matters.* Read it all. MR. ORTH: '. . . but the defendant Anita L. Fowler was operating the defendants' vehicle in a . . .' and so forth. I mean, I don't want to read the rest of it. If he wants to,— THE COURT: Well, go ahead. MR. ORTH: It's not material. As a matter of fact, I think I am entitled to ask him only that portion of what conflicts. THE COURT: *I know, but let's be sensible. You know and everybody knows that most of the clients don't even read the complaint. They rely upon their lawyer. A lawyer sticks it in front of them and they sign it. Now, that may not be the case here,* — MR. ORTH: Object to the Court's remark. THE COURT: Objection allowed. But we are trying this lawsuit not on this Complaint, we are trying the lawsuit on the evidence in this case. Now, if he made a contradictory statement, ask him — that is all right. . . . Q. Well, is your recollection about the distance you were on the pavement at the time of the impact, better now than it was on the 19th of June, 1953, after the accident had happened in April of the same year? A. I think so. Q. You think you remember it now better than you did then? A. Yes. Q. You think it would not be possible for you to have been out into the roadway two or three feet at the time this accident occurred? A. I don't

think I was out that far. THE COURT: Are you going to be some little time on cross examination? MR. ORTH: Yes. THE COURT: All right, we will take a recess, Ladies and Gentlemen of the Jury — about twenty minutes." (Italics ours.)

During the recess referred to, the appellant moved for a mistrial, which the court refused to grant. The italicized portions constitute the comment complained of.

We can understand the feeling of counsel when his impeachment of the respondent was minimized, and it must be conceded that the trial judge did, by his comments, let the jury know that he attached little or no importance to the circumstance relied on for impeachment.

We can also sympathize with the impatience of the trial judge when the time of the court is taken up with the dramatic "build-up" to develop the discrepancy to which we have just referred, and which could have been reached sans the "build-up" by a single and simple question. Nonetheless, the trial judge should have practiced judicial restraint regardless of its effect upon the judicial blood pressure.

We would not leave the impression that we regard the comment of which appellant complains either lightly or indulgently. All comment is prohibited, but it does not follow that every comment constitutes grounds for a mistrial or that a new trial will be granted in consequence thereof. The test is, Was the party complaining of the comment prejudiced thereby? *Heitfeld v. B. P. O. K.* (1950), 36 Wn. (2d) 685, 220 P. (2d) 655, 18 A. L. R. (2d) 983; *State v. Herwitz* (1919), 109 Wash. 153, 186 Pac. 290.

Appellant's claim of prejudice as set forth in his brief is as follows:

". . . [it] could not help but amount to a direction to the jury to disregard the impeaching efforts of counsel."

And again:

"Taken as a whole, the comments on the evidence (the verified complaint) gave the jury the impression that even if the respondent had read, sworn to and verified the statements in his complaint—statements which he considered material enough to plead as fact—it was not

to be considered by them material—but a 'minor matter'— not of much substance in the case. The court in effect had completely destroyed any use which the complaint (later admitted in evidence) might have had as a prior inconsistent statement of fact made under oath by the respondent himself."

■ We are of the opinion that it was not the trial court's statement that made the matter inquired of "minor." It was manifestly not a major discrepancy between the pleadings and the proof. If the respondent's car had been three feet instead of eighteen inches on the highway, it would have made no difference in the outcome of the case except that the damages would probably have been greater, and the appellant still had all the rest of the highway on which to travel. Nor can we conceive that the difference between eighteen inches and "two or three feet" would have impaired the witness' credibility with the jury in the slightest degree, had there been no comment. We find no prejudice in consequence of the comment.

The judgment is affirmed.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.